**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**AMANDA M. JONES, Individually and on
Behalf of all Arkansans Similarly Situated;**  **PLAINTIFF**

v.   4:19-CV-00811-BRW

**SANTANDER CONSUMER USA INC,**  **DEFENDANT**

**ORDER**

Pending is Defendant's Motion to Dismiss and to Compel Arbitration (Doc. No. 10). Plaintiff responded and Defendant replied.[1] For the reasons below, the motion is GRANTED.

**I.   BACKGROUND**

In 2013, Plaintiff purchased a Dodge Avenger from Landers Chrysler Jeep Dodge ("Landers").[2] As part of the purchase, Plaintiff and Landers entered into a Financing Agreement,[3] contained a choice-of-law clause stating Texas law will govern the contract.[4] Landers then assigned the Financing Agreement to Defendant.[5]

In 2016, Plaintiff requested an extension of payment terms.[6] Plaintiff "e-signed" an adhesion contract[7] extending payments and accepted all of the terms and conditions by clicking

---

[1] Doc. Nos. 13, 17.

[2] Doc. No. 1, p. 13.

[3] *Id*. at pp. 14-15.

[4] *Id*. at Ex. B; 11, p. 9.

[5] *Id*. at p. 16.

[6] Doc. No. 12, ¶4.

[7] An adhesion contract is a "form contract created and imposed by a stronger party upon a weaker party on a take this or nothing basis." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018).

1

an "I ACCEPT" button.[8] The electronic terms and conditions included an arbitration clause with a class action waiver provision.[9]

In 2017, Plaintiff requested another temporary extension of payment terms, and e-signed another adhesion contract extension. This adhesion contract contained substantively identical arbitration and class action waiver provisions as the first extension.[10]

Plaintiff requested a third extension in 2019. She e-signed another adhesion contract extension, which, again contained arbitration and class action waiver provisions.[11]

## II.   DISCUSSION

Plaintiff alleges the terms of the Financing Agreement and adhesion contract extensions violated the Arkansas Constitution's 17% interest rate cap and corresponding provisions of the Arkansas Deceptive Trade Practices Act.[12] She filed this action individually and on behalf of all similarly situated Arkansans.[13]

Defendant requests dismissal alleging that any dispute Plaintiff has with the Financing Agreement is governed by a valid, enforceable arbitration agreement.[14] Defendant argues the parties expressly delegated gateway issues of arbitrability to an arbitrator. Defendant also alleges the arbitration agreement contained a class action waiver enforceable by a court.[15] Defendant

---

[8] Doc. No. 12, ¶¶4-5.

[9] *Id*. at ¶¶6-7, 9.

[10] *Id*. at ¶¶10-14.

[11] *Id*. at ¶¶15-16.

[12] Doc. No. 1.

[13] *Id*.

[14] Doc. No. 10.

[15] *Id*.

argues the Court has jurisdiction to strike and dismiss Plaintiff's class claims, but must order arbitration of her individual claims and any other related claim.[16]

Plaintiff responds that Defendant failed to execute any of the adhesion contracts at issue, as required by the agreements themselves.[17] Plaintiff argues the arbitration clauses violate a contract requirement of mutuality.[18] Finally, she requests I adjudicate the enforceability of Defendant's class action waiver before deciding whether to compel arbitration.[19]

Defendant replies the Eighth Circuit does not require parties sign arbitration provisions for them to be enforceable.[20] Further, "the Eighth Circuit has expressly held that the Federal Arbitration Act ("FAA") preempts Arkansas's 'mutuality of obligation' requirement."[21]

### A.   Application of the Federal Arbitration Act

Congress enacted the FAA in 1925 "to enable merchants of roughly equal bargaining power to enter into binding agreements to arbitrate commercial disputes."[22] The limited purpose of the FAA at the time of enactment was to overcome "then-existing judicial hostility" to the arbitration of disputed between businesses.[23]

---

[16]Doc. No. 11, pp. 14-15.

[17]Doc. No. 13, pp. 2-3.

[18]*Id.* at pp. 3-5.

[19]*Id.* at pp. 5-7.

[20]Doc. No. 17, pp. 4-5.

[21]*Id.* at p. 1.

[22]*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1420 (2019) (Ginsburg, J., dissenting) (quoting *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1643 (2018) (Ginsburg, J., dissenting)).

[23]*Id.* (citing Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N. Y. U. L. Rev. 286, 323 (2013) (The FAA was enacted in 1925 with the seemingly limited purpose of overcoming the then-existing "judicial hostility" to the arbitration of contract disputes between businesses.).

In 1983, the Supreme Court established "a liberal federal policy favoring arbitration agreements."[24] In 1984, without any legislative intervention in the preceding 59 years, the Supreme Court extended the FAA to state courts and, by extension, state consumer protection laws.[25] This decades-after-the-fact extension runs contrary to congressional intent and every "originalist" principle of statutory construction. At the time of FAA enactment, the universal, established understanding of legislators was that "parties cannot by contract oust the ordinary courts of their jurisdiction."[26] When considering the FAA, every witness, Senator, and Representative "discussed one issue and one issue only: arbitration of contract disputes between merchants."[27]

There is zero support in any congressional record, testimony, or discussion, or in the FAA text, supporting the assertion that the FAA applies to adhesion contracts, like the contract at issue here.[28] Simply put, the FAA did not abrogate the Tenth Amendment by depriving States the power to enact enforceable statutory and Constitutional law that in no way conflicts with any federal power.

Today, despite clear legislative intent and history to the contrary, the FAA may apply to any contractual dispute, between any party or entity, regarding any subject, and regardless of any state consumer protection law or state constitutional provision. Clearly, with this backdrop, the FAA applies to the contract at issue here.

---

[24]*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U. S. 1, 24 (1983).

[25]*Southland Corp. v. Keating*, 465 U.S. 1, 24, 104 S. Ct. 852, 865 (1984) (O'Conner, J., dissenting).

[26]Christopher R. Leslie, *The Arbitration Bootstrap*, 94 TEX. L. REV. 265, 298 (2015) (citing *Ins. Co . v Morse*, 87 U.S. 445, 451 (1874)).

[27]*Id*. at p. 305.

[28]*Id*. at 290-296.

### B. Choice of Law

Defendant contends a choice-of-law clause in the Financing Agreement means Texas law governs interpretation.[29] Plaintiff argues that Arkansas law controls because the Financing Agreement was between two residents of Arkansas, executed in Arkansas, with performance in Arkansas. Defendant notes that for the determination of the current issues, it will rely on Eighth Circuit and Arkansas law.[30]

The choice-of-law clause here is valid under either Texas or Arkansas contract law. The clause, and the Financial Agreement as a whole, meet every requirement for enforceable contracts in both Texas and Arkansas. Accordingly, Texas law should control the interpretation of this contact. But based on the parties' arguments and limited stipulations, I will consider the issues under Arkansas law.[31]

### C. Enforceability of Arbitration Clauses at Issue

Plaintiff argues the arbitration clauses are invalid because Defendant failed to execute any of the adhesion contracts at issue, as required by the agreements themselves, and the clauses violate the contract requirement of mutuality.[32] Both of these arguments fail under Arkansas law.

---

[29] Doc. No. 12.

[30] Doc. No. 17, n. 2.

[31] Despite Plaintiff's arguments Arkansas law controls, she may have a better argument under Texas law. See *Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 836 (8th Cir. 2018) (Kelly, J. dissenting) ("Under Texas law, an arbitration agreement, like any other contract, 'is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate.' *Royston, [Rayzor, Vickery & Williams, LLP v. Lopez]*, 467 S.W.3d [494], 505 [(Tex. 2015)] (relying on Restatement (Second) of Contracts § 77 cmt. A. (Am. Law Inst. 1981); see also *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 691 n.5 (5th Cir. 2018)").

[32] Doc. No. 13, pp. 2-5.

### 1.   Execution of Electronic Agreements

Plaintiff "e-signed" the adhesion contracts at issue by clicking an "I ACCEPT" button.[33] This is not necessarily an electronic signature under Arkansas law.[34] However, courts routinely validate and enforce these types of "clickwrap agreements."[35] Furthermore, Plaintiff acted as if the agreements were valid in accepting the terms of the payment extensions. Accordingly, this argument to invalidate the adhesion contracts fails.

### 2.   Mutuality and Ambiguity

Section 2 of the FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*"[36] Title 9 U. S. C. § 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses,'" but "offers no refuge for 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'"[37]

---

[33]Doc. No. 12, ¶¶4-5.

[34]See Ark. Code Ann. § 25-32-107 ("(a) A record or signature may not be denied legal effect or enforceability solely because it is in electronic form. (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation. (c) If a law requires a record to be in writing, an electronic record satisfies the law. (d) If a law requires a signature, an electronic signature satisfies the law.").

[35]*Holley v. Bitesquad.com, LLC*, No. 4:18CV572 (E.D. Ark. Sept. 19, 2019). See e.g., *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1255 (10th Cir. 2012); *Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 382 (7th Cir. 2007); *Goza v. Multi-Purpose Civic Ctr. Facilities Bd. for Pulaski Cty.*, No. 12-CV-6125, 2014 WL 3672128, at *3 (W.D. Ark. July 23, 2014)); but see *STAP, Inc. v. Sutterfield*, 2020 Ark. Ct. App. 18, at *8 (2020) (Affirming the trial court's denial of defendant's motion to compel arbitration where defendant did not sign the arbitration agreement and the agreement stated no modification of the terms and conditions of this agreement are valid unless in writing and signed by both parties.).

[36]9 U. S. C. § 2 (emphasis added).

[37]*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

The arbitration clauses at issue are non-mutual and somewhat ambiguous, which until recently under Arkansas law, was grounds that "exist at law" to invalidate any contract provision. The FAA "requires that states place arbitration agreements on an equal footing with other contracts."[38] Arkansas has gone further. Arkansas has now decided to treat arbitration clauses as superior to other contract provisions and outside the long-established, basic considerations of contractual construction.

### a. Ambiguity

Arkansas courts have long held that unclear language in a contract should be construed strictly against the drafter.[39] This seems especially true when considering the terms of an adhesion contract like the ones at issue here. In these types of adhesion contracts, the drafter of the arbitration clause is always the party in a stronger position. But when considering arbitration clauses, arbitration language is not construed, strictly or otherwise, against the drafter. Instead, just the opposite is true. Every doubt and ambiguity is resolved in favor of arbitration and the drafter of the arbitration language.[40] Accordingly, under Arkansas law, any potential ambiguity here will not invalidate the arbitration clauses.

### b. Mutuality

Until recently, Arkansas law required mutuality of obligations in all contract provisions. This included obligations to arbitrate.[41] Mutuality of obligation did not require a "precisely even

---

[38]*Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 835 (8th Cir. 2018) (citing *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017)).

[39]*Stacy v. Williams*, 38 Ark. App. 192, 198 (1992) (citing *Elcare, Inc. v. Gocio*, 267 Ark. 605, 608-09 (1980)).

[40]*BHC Pinnacle Pointe Hosp., LLC v. Nelson*, 2020 Ark. 70, 12 ("We have explained that any doubts and ambiguities will be resolved in favor of arbitration.").

[41]*Jorja Trading, Inc. v. Willis*, 2018 Ark. App. 574 (vacated by *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133.).

exchange of identical rights and obligations between the contracting parties."[42] Mutuality of obligation simply required sufficient consideration for a party's promise.[43]

Here, there is no mutuality in a real obligation to arbitrate and no mutuality in ability to pursue other remedies. The arbitration provision binds Plaintiff to arbitrate any conceivable issue while Defendant is free to pursue other remedies for almost the entire universe of potential issues Defendant would raise.

The requirement of mutuality conforms with the plain meaning, clear legislative intent, and unambiguous legislative history of the FAA; that is to bind parties to arbitration agreements if they choose to agree to them. The entire purpose of the FAA, efficient dispute resolution between merchants, would be impaired by piecemeal, selective dispute resolution where one party must arbitrate any issues they have while the other party may arbitrate if they feel like it, but are not bound to arbitrate if they do not. Non-mutuality could "sacrific[e] the principal advantage of arbitration—its informality—and mak[e] the process slower, more costly, and more likely to generate procedural morass than final judgment."[44] Clearly, Congress did not intend this type of bifurcated, claim and party selective, piecemeal process to address claims arising out of the same contract, under the same circumstances, and involving the same issues, set of facts, and parties. Nothing in the FAA itself or the legislative history gives any support to such an arrangement.

After the parties submitted their briefs in this case, Arkansas placed arbitration clauses outside the requirements of other contract provisions. In *Jorja Trading*, the Arkansas Supreme Court noted the FAA's requirement that "courts place arbitration contracts on an equal footing

---

[42]*Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at *6 (citing *Lindner v. Mid-Continent Petroleum Corp.*, 221 Ark. 241 (1952); *Johnson v. Johnson*, 188 Ark. 992 (1934)).

[43]*Id.*

[44]*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622-23 (2018).

with other contracts."[45] The Arkansas Supreme Court recounted the Eighth Circuit's apparent disdain for Arkansas's mutuality requirement as it applies to arbitration agreements.[46] It then decided to "abolish the requirement for mutuality of obligation, at least as it pertains to arbitration provisions."[47] Accordingly, Plaintiff's argument that Arkansas law requires mutuality in arbitration agreement fails.

### D. Class Action Waiver

Both parties request I determine the validity of the class action waiver. Parties may limit the issues subject to arbitration, agree to specific rules, and limit parties.[48] The Supreme Court has upheld the validity of class-action waivers in arbitration agreements.[49] Both the Eighth Circuit and Eastern District of Arkansas judges have upheld similar class action waivers.[50] Accordingly, Plaintiff's class action allegations are dismissed.

### E. EDITORIAL

If I had any wiggle room, I would deny Defendant's motion. The Eighth Circuit and the Arkansas Supreme Court decisions are squarely contrary to what I learned about adhesion contracts and mutuality in law school over a half-a-century ago. Professor Corbin must be spinning in his grave.

---

[45] *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at *3 (citing *Plummer v. McSweeney*, 941 F.3d 341, 347 (8th Cir. 2019)).

[46] *Id.* (citing *Plummer v. McSweeney*, 941 F.3d 341, n.1 (8th Cir. 2019)).

[47] *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, at *12 (Brown, S.J., concurring).

[48] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

[49] *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (holding that the FAA's saving clause does not provide a basis for refusing to enforce arbitration agreements waiving class action procedures for claims under state law).

[50] *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *Campbell v. Jacob*, No. 4:19-CV-179-JM (E.D. Ark. Sept. 10, 2019); *Holley v. Bitesquad.com, LLC*, No. 4:18CV572 (E.D. Ark. Sept. 19, 2019).

In my opinion this is "big over little" quite without support in the pertinent legislation or in the dictates of fairness.

## CONCLUSION

But, alas, for the reasons set out above, I must reluctantly GRANT Defendant's Motion to Dismiss and to Compel Arbitration (Doc. No. 10).  I note that the lawyers for the parties each did an excellent job of briefing the issues.  The case is DISMISSED.

IT IS SO ORDERED this 20th day of July, 2020.

        Billy Roy Wilson        
        UNITED STATES DISTRICT JUDGE